FILED

Nov 12   2 5⁵ PM '03

U. S. DISTRICT COURT
REW HAVEN, CONN.

U.S. DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTOINETTE BLUNT,<br>  individually and by/through<br>HENRY WINIARSKI, Conservator of the<br>  Estate and Person of Antoinette Blunt<br>        Plaintiff | : | CIVIL ACTION NO.<br>3 02 CV 0518 MRK |
| V. | : | |
| BRANDON O'BRIEN and<br>THE CITY OF HARTFORD<br>        Defendants | : | November 12, 2003 |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to the FRCP 51and the Court's Pretrial Order, the plaintiff offers the following proposed

instructions to the jury.   Plaintiff requests permission to supplement or revise these instructions as

necessary, prior to and during trial.

## I.    INSTRUCTIONS ON 42 U.S.C. § 1983

### The Statute

The law to be applied in this case is the federal civil rights law which provides a remedy for

individuals who have been deprived of any rights secured or protected by the Constitution or laws of the

United States.  Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of statute, ordinance, regulation, custom or
> usage of any State or Territory or the District of Columbia, subjects or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges or
> immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Authority</u>:  **Monroe v. Pape**, 365 U.S. 167, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961), 42 USC § 1983.

## Purpose of Statute

Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution and laws of the United States. Before section 1983 was enacted in 1871, people so injured were not able to sue state or municipal officials or persons acting under color of state law for money damages in federal court.

Section 1983 was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts.

Section 1983 exists both to vindicate the public interest in deterring deprivations of Constitutional rights and to compensate those actually injured.  Liability for injurious conduct is an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' Constitutional rights.

<u>Authority</u>:  **Lugar v. Edmondson Oil Co.**, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); **Imbler v. Pachtman**, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); **Mitchum v. Foster**, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); **Monroe v. Pape**, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); **U.S. v. Northrop Corp.**, 59 F.3d 953, 967 (9th Cir. 1995); see, e.g., **Memphis Community School District v. Stachura**, 477 U.S. 299, 307-09, 106 S.Ct. 2537, 2534-44, 91 L.Ed.2d 249 (1986); **Owen v. City of Independence**, 445 U.S. 622, 651-52, 100 S.Ct. 1398, 1415-26, 63 L.Ed.2d 673 (1980).

2

**Burden of Proof**

The plaintiff has the burden of providing each and every element of her section 1983 claim by a preponderance of the evidence.

The defendants have the burden of proving each element of their affirmative defenses. I shall shortly instruct you on the elements of these defenses. If you find that any one of the elements of defendants' defenses has not been proven by a preponderance of the evidence, you must disregard the defense.

<u>Authority</u>:  **Gomez v. Toledo**, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).


**Elements of a Section 1983 Claim**

To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following elements:

- First, that the conduct complained of was committed by a person acting under color of state law;

- Second, that the defendant officer's conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

- Third, that the defendant's officer's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

<u>Authority</u>:  **Parrott v. Taylor**, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

3

## First Element - action Under Color of State Law

### Definition

The first element of the plaintiff's claims is that the defendant police officer acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, municipal ordinance, regulation, custom or usage, of any state. The term "state" encompasses any political subdivision of a state, such as a county, municipality, or city, and also any sate agencies or a county or city agency.

Action under color of state law means action that is made possible only because the action is clothed with the authority of the state. Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law. Again, the term "state" can be a municipality of a city.

**Authority**: Adickes v. S.H. Kress Co.. 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); **Monroe v. Pape**, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); **Screws v. United States**, 325 U.S. 91, 65 S.Ct. 1031, 80 L.Ed. 1495 (1945); **United States v. Classic**, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); **Hague v. C.I.O.**, 307 U.S. 496, 49 S.Ct. 954, 83 L.Ed. 1423 (1939); **Home Telephone & Telegraph Co. v. City of Los Angeles**, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913; **Ex parte Virginia**, 100 U.S. 339, 25 L.Ed. 676 (1880)

Acts are done "under color of . . . law" not only when government officials act within the bounds or limits of their lawful authority, but also when such officials act without and beyond the bounds of their lawful authority. In order for unlawful acts of an officer to be done "under color of any law," the acts must be done while the officer is acting, purporting, or pretending to act in the performance of his official duties; that is to say, the unlawful acts must consist in an abuse or misuse of power which is possessed by the officer only

4

because she or he is an officer; and the unlawful acts must be of such a nature, and be committed under such circumstances, that they would not have occurred but for the fact that the person committing them was an officer, purporting to exercise his official powers.

**Authority**:  **Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 472 (1961); Screws v. United States,** 325 U.S. 91, 65 S.Ct. 1031, 80 L.ED. 1495 (1945); **Monell v. Department of Soc. Serv. of City of New York**, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).


## Second Element - Deprivation of Right

The second element of plaintiff's claim is that she was deprived of her right by the defendant officer. In order for the plaintiff to establish the second element, she must show these things by a preponderance of the evidence: first, that the defendant officer committed the acts alleged by plaintiff; second, that those acts caused the plaintiff to suffer the loss of rights; and third, that in performing the acts alleged, the defendants acted intentionally and/or recklessly and/or deliberately and indifferent and/or grossly negligent.

The federal rights asserted by the plaintiff in this case arise from First, Fourth and Fourteenth Amendments to the U.S. Constitution.

The plaintiff claims the following rights:

1.     the right not to be illegally stopped and detained;

2.     the right not to be illegally seized;

3.     the right not to be illegally/falsely arrested;

4.     the right not to be subjected to unreasonable force;

5.     the right to travel freely.

5

The plaintiff also claims she is entitled to bring an action for damages under state law against the individual officer. The plaintiff claims the following additional wrongs have been done to her by the individual officer as follows:

1.    an intentional assault and battery;

2.    a reckless and/or grossly negligent assault and battery;

3.    intentional infliction of emotional distress;

4.    negligent infliction of emotional distress; and

5.    a violation of those rights secured to the plaintiff by Article First, Sections 7 and 9 of the Connecticut Constitution which I will speak to you later about, and against the City of Hartford pursuant to a statute called 7-465 and/or 7-101a which I will also speak to you about later.

## Fourth Amendment Violations

The plaintiff claims the defendant officer violated her rights under the Fourth Amendment to the U.S. Constitution.

The Fourth Amendment of the United States Constitution provides, in part, that:

> The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated . . .

Either an illegal stop of a person or an illegal detention of a person, or an illegal arrest of a person or a use of unreasonable force against a person is a violation of the provision of the Fourth Amendment just read to you. When a police officer makes an illegal stop, or an illegal detention, or an illegal arrest, or uses excessive force, a plaintiff may recover damages under the Civil Rights Act, 42 United States Code Section 1983, against that police officer.

6

Each citizen is clothed with constitutional protection against an unreasonable search or an unreasonable seizure. There are well-defined limits on what police officers may do in discharging their duties, and police may be held liable for acting outside these limits. Perhaps the most fundamental of these is the requirement that the police not interfere with the freedom of private persons unless it be for specific legitimate reasons.

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasion by government officials.

Intent is not an element of plaintiff's case. Plaintiff need not provide that defendant intended to deprive plaintiff of her rights. The fact that the defendant had no specific intent or purpose to deprive plaintiff of her civil rights will not absolve defendant from liability if he did in fact deprive plaintiff of her protected rights.

The responsibility for keeping abreast of constitutional developments in criminal law squarely is placed on the shoulders of law enforcement officials. Law enforcement officials must be cognizant not only how far their authority extends, but also of the point at which their authority ends.

**Authority**: Amendment 4, United States Constitutio; **Ybarra v. Illinois**, 444 U.S. 85, 91, 100 S.CT. 338, 342, 62 L.Ed.2d 238 (1979); **Marshall v. Barlow's**, 436 U.S. 307, 312, 313, 98 S.Ct. 1816, 1820-21, 46 L.Ed.2d 305 (1978); **Donald v. Wilson**, 847 F.2d 1191 (6th Cir. 1988); **Caballero v. City of Concord**, 956 F.2d 204 (9th Cir. 1992); **Ward v. San Diego**, 783 F.2d 1385, 1388 (9th Cir.), superseded on other grounds 791 F.2d 1329 (9th Cir. 1986); **Duran v. City of Douglas, Arizona**, 904 F.2d 1372, 1376 (9th Cir. 1990). See also, **Olmstead v. U.S.**, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, Holmes, Butler, and Stone, JJ., dissenting from denial of Certiorari).

7

## Difference Between Stop And Arrest

The Fourth Amendment permits police to detain an individual only if they have an articulable and reasonable suspicion that the individual has committed or is about to commit a crime.

To arrest an individual, police need more than a reasonable suspicion; they must have probable cause. Probable cause to arrest exists when under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the individual had committed a crime.

Whether a particular detention is a stop or an arrest is of importance because the classification will determine whether probable cause was required for an arrest, and may determine the legality of the police conduct

**Authority**: **Barlow v. Ground**, 943 F.2d 1132, 1135 (9th Cir. 1991).; **Washington v. Lambert**, 98 F.3d 1181, 1185-86 (9th Cir. 1996).


## Stops: Defined, and When Permitted

When a police officer, even briefly detains an individual and restrains that person's right to walk away, he has seized that individual. A detention no matter how momentary is a seizure under the Fourth Amendment.

To justify a limited momentary detention of a person without violating the Fourth Amendment's proscription against an unreasonable seizure, the police officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant seizure. .

8

In order to justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so; the facts must be such as would cause any reasonable police officer in like position, drawing when appropriate on his training and experience, to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith.

 **Authority**: **United States v. Sugrim**, 732 F.2d 25, 28 (2d Cir. 1984); **Terry v. Ohio**, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 888 (1968); **Florida v. Royer**, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); **Terry v. Ohio**, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).


## What A Seizure Is

An individual has been seized if considering all the circumstances a reasonable person would have believed his or her freedom of movement was restrained, or that he or she did not remain at liberty to disregard a police officer's request for information. Detention in a patrol car exceeds permissible limits absent some reasonable justification. An officer's failure to advise a citizen of his freedom to walk away is a significant indicator of what that citizen reasonably believed.

Physically grabbing, moving, and seating a suspect to ask questions, even in public, clearly restrains that suspect's liberty in a non-voluntary way, and indeed the use of physical means to restrain a person's movement is the most obvious form of seizure.

A seizure occurs when *either* the citizen submits to an assertion of authority or physical force is applied, regardless of whether the citizen yields to that force. A seizure is effected by the slightest application of physical force.

**Authority**: **Pliska v. Stevens Point**, 823 F.2d 1168, 1176 (7th Cir. 1987); **United States v. Mendenhall**, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); **Ludwig v. Anderson**, 54 F.3d 465, 471 (8th Cir. 1995); **California v. Hodari D.**, 499 U.S. 621, 625, 626, 111 S.Ct. 1547, 1550 113 L.Ed.2d 690 (1991); **United States v. Mendenhall**, 446 U.S. 544, 553-55, 100 S.Ct. 1870, 1076-77, 64 L.Ed.2d 497 (1980); **United States v. Ricardo D.**, 912 F.2d 337, 341 (9th Cir. 1990); **United States v. DelVizo**, 918 F.2d 821, 825 (9th Cir. 1990); **Morgan v. Woessner**, 975 F.2d 629, 636 (9th Cir. 1992); (withdrawn); **Florida v. Royer**, 460 U.S. 491, 103 S.Ct. 13199, 75 L.Ed.2d 229 (1983).

## Multiple Seizures As Part Of Same Event

The plaintiff claims in this case that the defendant officer stopped and sized her two times during the same incident. Many different seizures may occur during a single series of events. Stops, seizures and detention without individualized and articulated grounds for each incident of a stop, seizure and detention is unconstitutional.

**Authority**: **Ludwig v. Anderson**, 54 F.3d 465, 471 (8th Cir. 1995); **California v. Hodari D.**, 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991); see also, **Hopkins v. Andaya**, 958 F.2d 881 (9th Cir. 1992) **I.N.S. v. Delgado**, 466 U.S. 210, 216-17, 104 S.Ct. 1758, 1762-63, 80 L.Ed.2d 247 (1984); **Martinez v. Nygaard**, 831 F.2d 822, 827 (9th Cir. 1987)

10

### Arrest

Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983. An arrest need not be formal; it may occur even if the formal words of arrest have not been spoken, provided that the subject is restrained and his freedom of movement is restricted. There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning. The situation is to be viewed from the perspective of the person seized. An otherwise legal stop or detention becomes an arrest when it ceases to be "momentary."

**Authority**: **Caballero v. Concord,** 956 F.2d 204, 206 (9th Cir. 1992); **Pors v. Doherty**, 944 F2d, 91, 98 (2d Cir. 1991); **United States v. Del Vizo**, 918 F.2d 821, 824 (9th Cir. 1990); **United States v. Delgadillo-Velasquez**, 856 F.2d 1292, 1295 (9th Cir. 1998) (view from perspective of person seized); **United States v. Patterson**, 648 F.2d 625, 633 (9th Cir. 1981).

### Factors To Be Considered To Determine If A Stop Is An Arrest

Factors to be considered in deciding whether a stop or detention is an arrest are the intrusiveness of the stop, the aggressiveness of the police methods used, how much a plaintiff's liberty was restricted, the justification for the use of the tactics employed, and whether police had a sufficient basis to fear for safety so as to warrant the action taken.

Whether a stop or detention constitutes an arrest is determined by evaluating not only how intrusive the stop or detention was, but also by evaluating whether the method used by police were reasonable given the circumstances. Various factors are to be weighted to determine if a stop or a detention is an arrest, and they include, the length of a detention, whether a suspect was handcuffed

11

(handcuffing substantially aggravates the intrusiveness of a typical stop), whether weapons were drawn, and if they were drawn for how long and based on what facts, whether a suspect's freedom of movement was restricted, whether a suspect was placed in a police cruiser or moved.

**Authority**: **Washington v. Lambert**, 98 F.3d 1181, 1185-1190 (9th Cir. 1996); **Washington v. Lambert**, 98 F.3d 1181, 1187, 1189-90 (9th Cir. 1996); **United States v. Ricardo D.**, 912 F.2d 337, 34-42 (9th Cir. 1990); **United States v. Robertson**, 833 F.2d 777, 781 (9th Cir. 1987); **United States v. Battista**, 684 F.2d 1286, 1289 (9th Cir. 1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); **United States v. Del Vizo**, 918 F.2d 821, 825 (9th Cir. 1990); **United States v. Chamberlin**, 644 F.2d 1262, 1267 (9th Cir. 1980), cert denied, 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981).

### Consent

Acquiescence to authority is not voluntary consent. Consent must be voluntary and not the result of duress or coercion. Lack of intelligence, youthfulness so that the youth does not understand his or her right not to consent, or trickery invalidate voluntary consent. One's awareness of his or her right to refuse consent to police action is relevant to the issue of voluntariness of alleged content. The absence of such notice -- that one being detained is free to leave -- may imply that the detainee is being restrained. The officer's burden of showing consent was freely given is not satisfied by merely showing submission to a claim of lawful authority. An officer's failure to advise a citizen of his freedom to walk away is a significant indicator of what that citizen reasonably believed. An officer's request that an individual accompany him to another location may tend to indicate that the individual reasonably believed that he was not free to walk away.

**Authority**: **Buffkins v. Omaha**, 922 F.2d 465, 469 (8th Cir. 1990); **United States v. Mendenhall**, 446 U.S., 544, 554, 100 C.CT. 1870, 1877, 64 L.Ed.2d 497 (1980); **Schneckloth v. Bustamonte**, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973); **Lion Voulos v. Wilson**, 834 F.2d 504, 508-09 (th Cir. 1987); **Morgan v. Woessner**, 975 F.2d 629, 636 (9th Cir. 1992), withdrawn, 997 F.2d 1244 (9th Cir. 1993); **Florida v. Royer**, 460 U.S. 491, 503, 103 S.Ct. 1319, 1327, 75 L.Ed.2d 229 (1983).

## Probable Cause To Arrest

In general, probable cause to arrest exists when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.

Probable cause consists of information that would lead a reasonably cautious person to believe either that a crime has been or is being committed, or that a search will uncover evidence of a crime.

Probable cause must be determined at the time an arrest is made, and facts learned or evidence obtained as a result of a stop or arrest cannot be used to support probable cause unless they were known to the arresting officer at the moment the arrest was made.

**Authority**: **Weyant v. Okst**, 101 F.3d 845, 851 (2d Cir. 1996).  See also, **Dunaway v. New York**, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9 60 L.Ed.2d 824 (1979); **Wong sun v. U.S.**, 371 U.S. 471, 479, 83 s.Ct. 407, 412-19, 9 L.Ed.2d 441 (1963); **Brinegar v. United States**, 338 U.S. 160-175-76, 69999 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949); **Mackinney v. Nielsen**, 69 F.3d 1002, 1005 (9th Cir. 1995) ("prudent person" test).  **United States v. Burgos**, 720 F.2d 1520, 1525 (11th Cir. 1983); **United States v. Rojas**, 671 F.2d 159, 165 (5th Cir. Unit B 1982); **Michigan v. DeFillippo**, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979).  **Allen v. City of Portland**, 73 F.3d 232, 236 (9th Cir. 1995); see **Wong Sun**

v. U.S., 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441 (1963); **Henry v. U.S.**, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

### Probable Cause, Not Based On Verbal Opposition To Police

The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state. By its definition, probable cause can exist only in relation to criminal conduct, and civil disputes cannot give rise to probable cause. A resisting arrest charge (and by analogy breach of peace and interfering with a police officer) cannot provide probable cause for an arrest ab initio when there is no other underlying offense on which to base an arrest.

**Authority**: **Houstin v. Hill**, 482, U.S. 451, 461-63, 107 S.Ct. 2502, 2509-11, 96 L.Ed.2d 398 (1987); see also, **Buffkins v. Omaha**, 922 F.2d 465, 472 (8th Cir. 1990); **Allen v. City of Portland**, 73 F.3d 232,237 (9th Cir. 1995); **Kennedy v. Los Angeles Police Dept.**, 901 F.2d 702 (9th Cir. 1989); **Peterson v. City of Plymouth**, 60 F.3d 469 (8th Cir. 1995); **Moore v. Marketplace Restaurant**, 754 F.2d 1336 (7th Cir. 1985); see also, **Thomas v. Sams**, 734 F.2d 185 (5th Cir. 1984); **Groman v. Township of Manalapan**, 47 F.3d 628, 635 (3d Cir. 1995).

### Excessive Force, In General

The Fourth Amendment ot the United States Constitution provides, in part, that:

> The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated . . ..

14

A use of excessive force by police violates the provision of the Fourth Amendment just read to you. When a police officer uses excessive force, a plaintiff may recover damages against that police officer under the Civil Rights Act, 42 Untied States Code Section § 1983.

**Authority**: Amendment 4, United States Constitution; **Davidson v. O'Lone**, 752 F.2d 817, 827 (3d Cir. 1984).

### Force, General

Application of force by a police officer exceeding that which is reasonable and necessary under the circumstances states a claim under § 1983. A citizen has the right to be free from unreasonable force when being arrested or detained by a law enforcement officer. The right of an individual not to be subjected to excessive force has long been clearly established, and the question here is whether it was objectively reasonable for defendants to believe that their treatment of plaintiff did not violate that right. Reasonableness means the standard of reasonableness at the moment force is used. Events which occurred before the moment at which force is used are not probative of the reasonableness of the decision to use force.

The test you are to use to determine if the force used in this case was excessive is this: pay careful attention to the facts and circumstances, including the severity, or lack of severity, of the alleged crime in issue; whether the person against whom the force was used posed an immediate threat to the safety of the police or others; and whether the person against whom the force was used was actively resisting arrest or attempting to evade arrest by flight (trying to get away). You must weigh together all of these three facts to determine whether or not the force used was or was not excessive.

15

**Authority**: **Davidson v. O'Lone**, 752 F.2d 817, 827 (3d Cir. 1984.  **Street v. Parham**, 929 F.2d 537, 540 (10th Cir 1991); **Zuchel v. Spinharney**, 890 F.2d 273, 274 (10th Cir. 1989); **Calamia v. New York**, 879 F.2d 1025, 1035 (2d Cir. 1989).  **Greenidge v. Ruffin**, 927 F.2d 789, 792 (4th Cir. 1991); **Schulz v. Long**, 44 F.3d 643, 648 (8th Cir. 1995); **Graham v. Connor**, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).


### Force, Factors, Handcuffing Tightly

If, under the totality of the circumstances, a police officer unreasonably seizes a person by using excessive force, he or she has violated that person's Fourth Amendment rights.

A police officer's use of force violates the Constitution if, judging from the totality of the circumstances, the officer used greater force than was reasonably necessary.

Handcuffing one too tightly may constitute excessive force.

Injury is not an essential element of a Section 19083 claim based on excessive force.  No lasting, serious injury need be inflicted.

A jury could conclude that even if police did have probable cause to arrest, they nevertheless applied excessive force.

**Authority**: **Lester v. City of Chicago**, 830 F.2d 706, 713 (7th Cir. 1987);  **Gary v. Spillman**, 925 F.2d 90, 93 (4th Cir. 1991);  **Barlow v. Ground**, 943 F.2d 1132 (9th Cir. 1991).


### First Amendment

The plaintiff has claimed that her First Amendment rights were violated by the defendant officer's actions.  Particularly, the plaintiff claims that a fundamental right to travel, which is a protected right under

16

the First Amendment to the U.S. Constitution, was violated. Travel within a particular state such as Connecticut is a protected right under the First Amendment to the U.S. Constitution. It is up to you, the jury, to decide whether the plaintiff's claims that her freedom of travel was curtailed by the defendant officer's actions during the first and/or second encounter.

**Authority**: **King v. New Rochelle Municipal Housing Authority**, 442 F.2d 646, 648 (2nd Cir. 1971); see also, **Street Watch v. National Railroad Passenger Corporation**, 875 F.Supp. 1055 (S.D.N.Y. 1995).

## False Arrest

False arrests are analyzed under the Fourth Amendment to the U.S. Constitution and are recognized under an action for damages pursuant to 42 U.S.C. § 1983. As you will recall, this is the statute I spoke to you about earlier and under which the plaintiff is claiming a basis for damages.

Plaintiff claims that she was falsely arrested by the defendant Brandon O'Brien. To establish false arrest the plaintiff must show unlawful restraint by one person against the physical liberty of another. A formal arrest is not necessary to sustain a cause of action for false arrest. A confinement may be by taking a person into custody under an asserted legal authority. It is not necessary for a plaintiff to establish that the criminal proceedings terminated in her favor. I instruct you that the criminal proceedings in this case were terminated by the prosecutor under a nolle prosecuti. This is a Latin term which essentially means that the prosecutor has decided not to move forward with the case and prosecute the plaintiff. Please recall that I spoke earlier that probable cause is a necessary predicate for a lawful arrest. The entry of a nolle prosecuti by the prosecutor in the underlying criminal case (commenced by the defendant officer against the plaintiff) is a sufficient basis upon which a false arrest claim may be asserted. In the final analysis, it is

17

up to you, the jury, to determine whether or not the defendant Brandon O'Brien had probable cause to

arrest the plaintiff.

**Authority**: **Haynes v. City of New London**, 136 F.Supp. 3d (2002) Case No. 3:99CV2551(CFD);

**Russo v. City of Hartford**, 136 F.Supp 3d (2002) Case No. 3-97-CV-2380 (JCH).


## Municipal Liability By Statute

Now, as you know, the City of Hartford is a named defendant. This claim is based upon a statute,

Section 7-465 and 7-101A. Let me first address statute 7-465 which provides in relevant part::

> Assumption of liability for damage caused by employees . . .Any . . .city or
> borough . . .shall pay on behalf of any employee of such municipality . . . all
> sum which such employee becomes obligated to pay by reason of liability
> imposed upon such employee by law for damages awarded for infringement
> of any person's civil rights or for physical damages to person or property . .,
> if the employee, at the time of occurrence, . . . or damages complained of,
> was acting in the performance of his duties and within the scope of his
> employment, and if such occurrence . . . was not the result of any willful or
> wanton act of such employee in the discharge of such duty. . . .

You will see from a reading of this statute, 7-645, that the City of Hartford will not be obliged to

pay any damages unless and until the employee has been found by you to be legally liable. The City's

obligation arises (1) if the employee is held liable, (2) if he was acting in the performance of his duties,

and within the scope of his employment, and (3) if such occurrence was not the result of a willful or

wanton act of the employee. The word "willful" means intentional or voluntary. The word "wanton"

means to act without restraint, with heedless disregard of the rights of others.

Accordingly, even though you found one or more of the individual defendants liable, the City

would not be liable if the acts of such individual defendants were willful or wanton, as opposed to mere

negligence or carelessness.

18

If you resolve the issue of liability in favor of the plaintiff, against one or more of the defendants, then you should go on and consider the question of damages.

Now let me address the City of plaintiff's liability under § 7-101a. That statute provides:

a.       Each municipality shall protect and save harmless . . . municipal employees, of such municipality from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such employee while acting in the discharge of his duties.

b.       In addition to the protection provided under subsection (a) of this section, each municipality shall protect and save harmless any such employee from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit instituted against such employee by reason of alleged malicious, wanton or willful act or ultra vires act, on the part of such employee while acting in the discharge of his duties.

### Third Element - Causation
### Proximate Cause - Generally

The third element which plaintiff must prove is that defendant officer's acts were a proximate cause of the injuries sustained by the plaintiff. Proximate cause means that there must be a sufficient causal connection between the act or omission of the defendant police officer and any injury, loss or damage sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury; that is, if the injury or damage was a reasonably foreseeable consequence of the defendant's act or omission, it was proximately caused by such act or omission. If a loss was a direct result or a reasonable probable consequence of the defendant's acts or omissions, it was proximately caused by such act

19

or omission.  In other words, if the defendant police officer's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission was the proximate cause.

In order to recover damages for any injury or loss, the plaintiff must show by a preponderance of the evidence that such injury or loss would not have occurred without the conduct of the defendant officer.  If you find that the defendants have proven, by a preponderance of the evidence, that the injury which plaintiff complains about, would have occurred, or did occur in the absence of the defendant's conduct, you must find that the defendants did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damage.  Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury which intervenes or supersedes the defendant's act or omission and which produces a result which was not reasonably foreseeable by the defendants.

**Authority**:  **Graham v. Western Line Consolidated School District**, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); **Mt. Health City School District Board of Educ. v. Doyle**, 429 .S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).  See also, Sand, et al Modern Federal Jury Instructions (1989), Instruction 87-79.

## II.    **DAMAGES**

### **Compensatory Damages - § 1983**

I now turn to the issue of compensatory damages under the § 1983 claim.  The measure of compensatory damages is such amount as you believe will fairly and justly compensate plaintiff for any damages, injuries and loss you believe that she actually sustained as a direct consequence of the conduct of the defendant officer.

You shall award damages only for those injuries and losses which you find that the plaintiff has proven by a preponderance of the evidence.  Moreover, you shall award actual damages only for those losses which you find plaintiff has proven by a preponderance of evidence to have been the direct result of the acts and/or omissions by the defendant.  That is, you may not simply award actual damages for any losses suffered by the plaintiff -- you must award actual damages only for those losses that are a direct result of actions by the defendant and that are a direct result of conduct by defendant which violated plaintiff's rights under color of law.

**Authority**:  Sand, et al, Modern Federal Jury Instructions (1989) Instruction 87-87.

### **Economic and Non-Economic Compensatory Damages**

If you return a verdict that the defendant officer violated plaintiff's Constitutional rights, you will award her a sum that will compensate reasonably for (1) any pain, suffering and mental anguish already suffered and proximately resulting from the incidents in question; and (2) for any pain, suffering and mental anguish which you find from the evidence in the case that is reasonably certain to be suffered in the future from the same cause.

21

Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries and impairment of reputation, personal humiliation, and mental anguish and suffering.

**Authority**: Devitt, Blackman, Wolff & O'Mally, <u>Federal Jury Practice and Instructions</u>, 4tj §
85.02; **Memphis Community School District v. Stachura**, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91
l.Ed.2d 249 (1986) (QUOTING **Gertz v. Welch**, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789
(1974), citing **Cary v. Piphus**, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978).


### Inferred, Humiliation

When there is no formal evidence of actual damage, such harm can be inferred from the circumstances as well as established by testimony.  Humiliation is an item of damages.

**Auhority**: **Howard v. Adkison**, 887 F.2d 134, 139 (th Cir. 1989); **Seaton v. Sky**, 491 F.2d 634,
636 (7th Cir. 1974).


### Damages - Nominal

If you return a verdict that plaintiff's Constitutional rights were violated by the defendant officer, but do not find that plaintiff has sustained provable damages, then you must return a verdict for the plaintiff in the nominal sum of one dollar.

The award of nominal damages would not preclude you from awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.

**Authority**:  Devitt, Blackmar, Wolff & O'Malley, <u>Federal Jury Practice and Instructions</u>, 4th, §
85.18 (modified).

22

### Damages - Punitive, Bases

In addition to actual damages or nominal damages, the law permits a jury, to award a plaintiff punitive damages, in order to punish a wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct. The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior.

If the jury should find from a preponderance of the evidence that a plaintiff is entitled to a verdict for nominal or compensatory damages; and should further find that an act or omission of a defendant, which legally caused injury to a plaintiff, was callously or, maliciously, or wantonly, or oppressively done, then the jury may, add to an award of nominal or compensatory damages, such amount as the jury shall find to be proper, as punitive damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward persons in one or more groups or categories of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard or, indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is "oppressively" done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether to make an award of punitive damages is a matter exclusively within the province of the jury, if the jury should find, from a preponderance of the evidence in the case, that a defendant's act or omission violated the Constitution or other federal rights and was callously or maliciously, or wantonly, or

23

oppressively done.  The jury should bear in mind that such punitive damages may be allowed only if the jury should first render a plaintiff a verdict for nominal or compensatory damages.

   <u>Authority</u>:  **Fountilla v. Carter**, 571, F.2d 487 (9th Cir. 1978); **Smith v. Wade**, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); **Memphis Community School District v. Stachura**, 477 U.S. 299, 306 n. 9, 206 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986) (collecting cases).  **Fountila v. Canter**, 511 F.2d 487 (9th Cir. 1978).

## III.     PENDENT STATE CLAIMS

### Intention Infliction of Emotional Distress

The plaintiff has alleged a cause of action known as intentional infliction of emotional distress.  In order to succeed on this claim you must find that the plaintiff has proven to you by a fair preponderance that the defendant officer intended to inflict emotional distress or that he knew or should have known that emotional distress would likely result from his conduct.  Furthermore, the plaintiff is required to prove that the conduct was extreme and outrageous and that the defendants' conduct was the proximate cause of the plaintiff's distress.  The plaintiff must also establish that the emotional distress sustained by the plaintiff was severe.  Here the plaintiff alleges that the defendants acted with malice and with disregard for the consequences of their actions and thereby caused the plaintiff to experience extreme emotional distress.  The plaintiff claims that she suffered humiliation, anxiety and mental anguish as a result of this conduct.  If you find that the plaintiff has proven by a fair preponderance that she suffered extreme emotional distress under the law which I have just stated to you, then you may award damages as are fair, just and reasonable to compensate the plaintiff for her injuries.

**Authority**:  Wright and Ankerman, Connecticut Jury Instructions, Civil, (4 Edition) § 40g; **Peytan v. Ellis**, 200 Conn. 243, 510 A.2d 1337 (1986); **Leabo v. Leniski**, 2 Conn. App. 715, 726, 484 A.2d 239 (1984). cert. den., 202 Conn. 806, 520 A.2d 1286 (1987).

### Negligent Infliction of Emotional Distress

The plaintiff has alleged a cause of action known as negligent infliction of emotional distress.  In order to succeed on this claim, you must find that plaintiff has proven to you by a preponderance that: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the plaintiff

25

emotional distress; (2) from the facts known to him, he should have realized that the distress, if caused, might result in illness or bodily harm; (3) plaintiff's distress was foreseeable; and (4) the defendant officer's conduct was the proximate cause of plaintiff's distress.  The plaintiff does not need to show actual physical harm or injury so long as defendant's conduct involved an unreasonable risk of causing distress.

**Authority**:  **Montinieri v. Southern New England Telephone Company**, 175 Conn. 337 (1970). **Carroll v. Allstate**, 262 Conn. 433, 444, 815 A2d 119 (2003).


## Assault and Battery

.       The plaintiff in this case is claiming damages for physical injuries which she alleges were inflicted upon her by the defendant, that is, the plaintiff bases her claim upon what is ordinarily spoken of as an assault.  An assault may be defined as an unlawful application of force or violence to the person of another.  That definition involves two elements: Force or violence must be applied to the person of another, and as to this element I need only to add that it does not matter ,as far as the liability of the defendant officer is concerned, how little or how great was that force or violence, although, if you find that the defendant did commit an assault, the amount of damages you can properly determine to be due the plaintiff would vary with the extent and nature of the force applied.

The other element involved in the offense with which the plaintiff charges the defendant is that the application of the force or violence must be unlawful.  That does not necessarily mean that there was any preconceived intent on the part of the defendant to injure the plaintiff, although an assault arising out of such an intent would be unlawful.  Nor need an assault in order to be unlawful necessarily be intentional, or wanton, that is, the result of a reckless disregard of consequences on the part of the one charged with the

26

offense. It would be sufficient if the assault was the result of negligence on his part, that is to say, of a failure on his part to use the car which a person of ordinary prudence would use under the circumstances present. **Lentine v. McAvoy**, 105 Conn. 528, 531 (1937). But, to be a basis of recovery, the application of force or violence must, by reason of the intent, the wanton conduct, or the negligence of the party charged with the offense, be unlawful. From that it follows that if the force or violence applied to the person of the plaintiff was the result of mere accident, apart from intention, wantonness or negligence, it was not unlawful and the plaintiff cannot recover. **Morris v. Platt**, 32 Conn. 75, 87 (1864).

In summary, therefore, the plaintiff must have proved to you by a fair preponderance of the evidence that the defendant did unlawfully apply force or violence to her person; and unless the plaintiff has so proved, you need go no further in your consideration of the case, but must render a verdict for the defendant.

**Authority**: Wright and Ankerman, Connecticut Jury Instructions, Civil, (4 Edition) § 400 a, b and c.

**False Imprisonment**

a.      Now, false imprisonment is the unlawful restraint by one or more persons of the physical liberty of another. It is an act directly or indirectly confining another within the boundaries fixed by the actor for any time whatsoever, however short, irrespective of whether harm is caused, and provided that:

(1)     the act is intended to confine the other;

(2)     the one being confined is conscious of that confinement; and

(3)     the confinement is not consented to or is otherwise not privileged.

27

Our law implies a force in every false imprisonment, and any unlawful detention of a person against her will is such a false imprisonment. It is not an essential element for a plaintiff to resist an attempt to hold her, or to disregard orders or to use actual force in order to preserve her rights against one who has falsely imprisoned or unlawfully detained her. I shall speak more of this later.

b.      The burden of proof in this action is upon the plaintiff to prove that her physical liberty has been restrained by the defendant officer. If she has proved that the defendant officer restrained her liberty, then the defendant is liable, unless it has proved by a fair preponderance of the evidence that such restraint was lawful; that is, that it was justified under our law.

c.      Now, that being the situation, the logical way for you to approach the performance of your duties in this case would seem to be for you first to pass upon the question as to whether the plaintiff's liberty has been restrained by the defendant, and when, of course, I say "the defendant", I mean the defendant officer; and then if you find that it was, to pass upon the question of whether this defendant was justified under the law in doing what he did.

d.      Speaking generally, everyone is at liberty to go where he will without being directly restrained by anyone else; so it is that any direct [or indirect] restraint by which a person is compelled to stay in any place against his/her will for any time, long or short, is a violation of his/her legal rights and gives rise to a cause of action in his/her favor against the person or corporation so restraining him. In order to be unlawful the restraint must be intentional. The mere accidental hampering of a person's movements is not unlawful and, indeed, a restraint which results simply from negligence is not such a restraint as to give rise to a cause of action for false imprisonment. The restraint which must be proved, and in order to be a ground for an action of false imprisonment, must be a direct restraint of a person's freedom to move, or must be a compulsion to move where the person does not wish to go; that is to say, a

28

compulsion to go or stay against a person's will. In order to be false imprisonment, this restraint must be by force, express or implied. That is, it must be by force or something which in the eyes of the law is the equivalent of force.

e.       Any exercise of force, express or implied, by which in fact the other person is deprived of her liberty, is compelled to remain where she does not wish to remain, or is compelled to go where she does not wish to go, is an imprisonment. While actual force is not necessary, it is essential that the conduct of th person complained of must at least be such as to show that force will be used to detain the plaintiff, if necessary.

f.       An unlawful restraint may exist by threats, as well as by actual force; and the threats may exist or may be manifest either by conduct or words or both. If the words or conduct are such as to induce a reasonable apprehension of force and the kind of force to be used, then it is the same as though actual force had been applied. In other words, false imprisonment may exist even though there is not any actual physical force used in the confining and restraining as, for instance, where one is led to believe that the efforts to escape from the place in which she finds herself would meet with resistance that would result in substantial humiliation, disgrace or serious inconvenience or violence.

g.       Now, in this case you will have in mind a restraint of a person's freedom to move is not such a restraint as will give rise to a cause of action for false imprisonment unless it is a restraint against a person's will. If the plaintiff had consented to the restraint, she of course, has no cause of action, and her suit must fail. Accordingly, a plaintiff in this or any action for false imprisonment must present not only evidence that she has been restrained, but also that the restraint has been against her will. If the plaintiff here consented to the restraint and acquiesced in it willingly, she has no ground of complaint with respect

29